**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOAN SILKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROCKFORD MERCANTILE | ) |
| AGENCY, INC. d/b/a RMA | ) |
| COLLECTIONS, | ) |
| | ) |
| Defendant. | ) |

## **COMPLAINT**

NOW COMES the Plaintiff, JOAN SILKE, by and through her attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and for her complaint against the Defendant, ROCKFORD MERCANTILE AGENCY, INC. d/b/a RMA COLLECTIONS, Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. JOAN SILKE, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Worth, County of Cook, State of Illinois.

1

5. The debt that Plaintiff was allegedly obligated to pay was a debt originally allegedly owed by Plaintiff to Ultra Care Home Medical (hereinafter, "the debt").

6. The debt was for a bill relative to medical services and/or medical supplies obtained by Plaintiff.

7. Upon information and belief, the debt was purchased, acquired and/or otherwise obtained by Walgreens' Option Care (hereinafter, "Walgreens").

8. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

9. ROCKFORD MERCANTILE AGENCY, INC. d/b/a RMA COLLECTIONS, (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Illinois. Defendant is incorporated in the State of Illinois.

10. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

11. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

12. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

13. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

14. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV. ALLEGATIONS

15. Upon information and belief, prior to in or around June 2011, the debt was purchased, acquired and/or otherwise obtained by Walgreens.

16. In or around June 2011 through in or around October 2011, and on multiple occasions therein, Defendant initiated multiple telephone calls to Plaintiff in an attempt to collect the debt.

17. On multiple occasions during the aforesaid time period, when Plaintiff answered the telephone calls initiated by Defendant, no-one from Defendant would speak and Defendant intentionally disconnected the call.

18. At no time during the course of the aforementioned telephone calls to Plaintiff did Defendant provide information relative to the individual caller's identity.

19. At no time during the course of the aforementioned telephone calls to Plaintiff did Defendant's duly authorized representatives provide Plaintiff with information relative to the Defendant's identity.

20. At the time Defendant initiated the multiple telephone calls to Plaintiff, Defendant's telephone number appeared on Plaintiff's caller identification.

21. At the time Defendant initiated the multiple telephone calls to Plaintiff, Defendant's name would appeared on Plaintiff's caller identification.

22. Plaintiff was only able to ascertain the multiple telephone calls, as delineated above, came from Defendant by viewing Defendant's telephone number and name on her caller identification.

23. On or about October 22, 2011, Plaintiff initiated a telephone call to Defendant at the telephone number that appeared on her caller identification.

24. On or about October 22, 2011, Plaintiff engaged in a telephone conversation with Defendant wherein Defendant informed Plaintiff it had been contacting Plaintiff in an attempt to collect the debt.

25. The aforesaid telephone call was Defendant's initial communication with Plaintiff relative to the debt on which Defendant was attempting to collect.

26. Plaintiff requested that Defendant provide her with a statement demonstrating the amount of the debt.

27. Plaintiff further informed Defendant as a result of not having received any documentation from Defendant to demonstrate she owed the debt, that she disputed having to make payments directly to Defendant.

28. Plaintiff informed Defendant that she would rather make payments directly to Walgreens.

29. Defendant has not provided to Plaintiff, within five (5) days of its initial communication to collect the alleged debt, with written confirmation of the amount of the debt, the name of the creditor to whom the debt is allegedly owed or a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

30. In or around October 2011, Plaintiff engaged in a telephone conversation with Walgreens.

31. Plaintiff informed Walgreens that Defendant was attempting to collect the debt.

32. Plaintiff further informed Walgreens that Defendant had initiated multiple telephone calls to her in an attempt to collect the debt.

33. Walgreens informed Plaintiff that it had not sent any debt to Defendant for collections.

34. Walgreens further informed Plaintiff that she should not make any payments to Defendant relative to the debt.

35. During the course of the aforesaid telephone call between Plaintiff and Walgreens, Walgreens informed Plaintiff that any payments she made relative to the debt should be made directly to Walgreens.

36. Walgreens further informed Plaintiff that Plaintiff should tell Defendant to stop contacting her relative to the debt.

37. Given Walgreens' statements, Plaintiff believed that she should make any payments relative to the debt directly to Walgreens and not to Defendant.

38. In or around November 2011, due to Walgreens' statements, Plaintiff entered into a payment agreement with Walgreens relative to the debt.

39. On or about December 15, 2011, Plaintiff made a payment to Walgreens in the amount of $20.00 relative to the debt.

40. Plaintiff made the December 15, 2011, payment to Walgreens in accordance with the payment agreement she entered into with Walgreens.

41. On or about December 15, 2011, Walgreens accepted Plaintiff's payment in the amount of $20.00.

42. On or about December 15, 2011, Walgreens applied the payment it accepted from Plaintiff towards the balance Plaintiff allegedly owed against the debt.

43. Subsequent to Plaintiff having made her first payment to Walgreens relative to the debt, on or about December 28, 2011, Plaintiff engaged in a telephone conversation with Defendant.

44. During the course of the aforesaid telephone conversation between Plaintiff and Defendant, Defendant, again, told Plaintiff that it was attempting to collect the debt.

45. During the course of the aforesaid telephone conversation between Plaintiff and Defendant, Defendant told Plaintiff she had to pay Defendant relative to the debt on which it was attempting to collect.

46. Plaintiff informed Defendant that she had already made a payment directly to Walgreens relative to the debt.

47. Plaintiff further informed Defendant that she had already entered into a payment agreement with Walgreens relative to the debt.

48. Plaintiff further informed Defendant that Walgreens told Plaintiff that she should not make any payments to Defendant relative to the debt.

49. Defendant responded to Plaintiff's statements, as delineated above, by informing Plaintiff that it was not permissible for her to make payments directly to Walgreens.

50. Defendant then told Plaintiff that she had to make payments directly to Defendant relative to the debt.

51. Defendant then provided Plaintiff with its address(es).

6

52. Defendant then told Plaintiff that she had to send payments to Defendant relative to the debt at the address(es) it provided to Plaintiff.

53. Defendant's representation to Plaintiff, during the course of the aforesaid telephone call, that it was not permissible for Plaintiff to make payments directly to Walgreens relative to the debt, was false, deceptive and/or misleading given that Plaintiff had already made a payment to Walgreens that was accepted by Walgreens, and applied towards the balance of the debt she allegedly owed.

54. In or around December 2011, subsequent to Plaintiff having made her first payment to Walgreens relative to the debt, Defendant sent Plaintiff a correspondence. (See a true and exact copy of said correspondence attached hereto as **Exhibit A**).

55. Defendant identified the correspondence as an "Account Payment Book." (**Exhibit A**).

56. The "Account Payment Book" Defendant provided to Plaintiff contained multiple "payment slips" dictating the terms of a putative payment agreement entered into between Plaintiff and Defendant. (**Exhibit A**).

57. At no time has Plaintiff entered into a payment agreement with Defendant relative to the debt.

58. The "Account Payment Book" Defendant provided to Plaintiff stated Plaintiff owed a debt to Ultra Care Home Medical, which was the same debt on which Plaintiff had made a payment directly to Walgreens.

59. The "Account Payment Book" Defendant provided to Plaintiff stated Plaintiff owed payments to Defendant in the amount of $20.00 a month, to be paid on the fifteenth (15th) of each month. (**Exhibit A**).

60. The "Account Payment Book" Defendant provided to Plaintiff stated that Plaintiff's payments were to be sent directly to Defendant. (**Exhibit A**).

61. By providing the "Account Payment Book" to Plaintiff, Defendant represented that Plaintiff and Defendant had entered into a payment plan relative to the debt on which Defendant was attempting to collect.

62. Defendant's representation that the parties had entered into a payment plan relative to the debt was false, deceptive and/or misleading given that Plaintiff and Defendant never entered into a payment plan relative to the debt.

63. By providing the "Account Payment Book" to Plaintiff, wherein Plaintiff was directed to make payments to Defendant, Defendant, again, represented that Plaintiff's payments towards the debt had to be made directly to Defendant as opposed to Walgreens

64. Defendant's representation to Plaintiff, in the aforesaid correspondence, that it was not permissible for Plaintiff to make payments directly to Walgreens relative to the debt was false, deceptive and/or misleading given that Plaintiff had already made a payment to Walgreens that was accepted by Walgreens and applied towards the balance of the debt she allegedly owed.

65. On or about January 10, 2012, Plaintiff made a payment directly to Walgreens in the amount of $40.00 relative to the debt.

66. Plaintiff made the January 10, 2012, payment to Walgreens in accordance with the payment agreement she entered into with Walgreens.

67. On or about January 10, 2012, Walgreens accepted Plaintiff's payment in the amount of $40.00.

68. On or about January 10, 2012, Walgreens applied the payment it accepted from Plaintiff towards the balance Plaintiff allegedly owed against the debt.

69. On or about January 10, 2012, Plaintiff engaged in a telephone conversation with Walgreens.

70. During the course of the aforesaid telephone call between Plaintiff and Walgreens, Plaintiff told Walgreens that she wanted to settle in full the debt she allegedly owed.

71. Plaintiff then asked Walgreens for the amount that she could pay to Walgreens to settle in full the debt she allegedly owed.

72. Walgreens informed Plaintiff that she could make a payment to Walgreens in the amount of $1,039.06 to settle in full the debt she owed.

73. Walgreens further informed Plaintiff that if she made a payment to Walgreens in the amount of $1,039.06, then the debt she owed would be paid in full.

74. Given Walgreens' statements, Plaintiff believed that if she paid Walgreens $1,039.06 then the debt she owed would be paid in full.

75. On or about January 13, 2012, given Walgreens' statements, as delineated above, Plaintiff sent a check to Walgreens in the amount of $1,039.06.

76. On the check Plaintiff sent to Walgreens, on or about January 13, 2012, Plaintiff wrote "payment in full."

77. On the check Plaintiff sent to Walgreens, on or about January 13, 2012, Plaintiff wrote the account number relative to the debt.

78. On or about January 13, 2012, in conjunction with Plaintiff sending the aforesaid check to Walgreens, Plaintiff sent a correspondence to Walgreens.

9

79. In her correspondence to Walgreens dated January 13, 2012, Plaintiff stated "[h]ere is a check for the total amount in full of $1,039.06."

80. On or about January 13, 2012, Plaintiff made a payment to Walgreens in the amount of $1,039.06 to settle in full the debt she allegedly owed.

81. Plaintiff made the January 13, 2012, payment to Walgreens in accordance with the agreement entered into between Plaintiff and Walgreens on or about January 10, 2012.

82. On or about January 13, 2012, Walgreens accepted Plaintiff's payment in the amount of $1,039.06.

83. As of on or about January 13, 2012, subsequent to Walgreens having accepted Plaintiff's payment, given the agreement entered into between Plaintiff and Walgreens, Plaintiff no longer owed the debt.

84. As of on or about January 13, 2012, subsequent to Walgreens having accepted Plaintiff's payment, given the agreement entered into between Plaintiff and Walgreens, Plaintiff had paid in full the debt she allegedly owed.

85. Subsequent to Plaintiff having paid in full the debt she allegedly owed, from in or around January 2012 through in or around February 2012, Defendant initiated multiple additional telephone calls to Plaintiff in a further attempt to collect the debt.

86. On or about January 25, 2012, Defendant initiated a telephone call to Plaintiff in a further attempt to collect the debt wherein the parties engaged in a telephone conversation.

87. During the course of the aforesaid telephone call, Defendant requested that Plaintiff immediately provide Defendant with her financial information.

88. Plaintiff informed Defendant that she recently had spinal surgery and that she was not capable of speaking to Defendant at that time as she was in pain.

89. Plaintiff further informed Defendant that she was not capable of speaking to Defendant at that time as she was on pain medication as a result of the spinal surgery she recently underwent.

90. Plaintiff then asked Defendant if it could either call her back at a later date or if Defendant could speak to Plaintiff's husband instead of speaking with her.

91. Defendant responded by informing Plaintiff that it required Plaintiff to immediately provide Defendant with her financial information.

92. Due to Defendant's representations, Plaintiff believed that she had no choice but to provide Defendant with the financial information it requested she provide.

93. At the time Plaintiff had answered the aforesaid telephone call, Plaintiff was lying in bed.

94. Due to Defendant's representations that it immediately required financial information from Plaintiff, Plaintiff attempted to get up from her bed to obtain the financial information Defendant requested from her.

95. At the time Plaintiff attempted to get up from her bed she experienced severe pain in her back.

96. Plaintiff then told Defendant that she could not get up from her bed to provide Defendant with the information it requested.

97. Plaintiff explained to Defendant that it was too painful for her to get up from her bed as a result of the recent surgery she underwent.

98. Plaintiff then, again, requested that Defendant contact her at a later date or speak to her husband instead of her as she was not able to speak to Defendant.

99. Subsequent to Plaintiff having made the aforesaid statements, Defendant's duly authorized representative called Plaintiff a "cry baby."

100. Subsequent to Plaintiff having made the aforesaid statements, Defendant's duly authorized representative called Plaintiff a "whiny bitch."

101. Defendant's statements, as delineated above, are neither statements made in an effort to seek payment from Plaintiff nor statements made to further the collection efforts of Defendant.

102. The natural consequence of Defendant's statements was to unjustly condemn and vilify Plaintiff for her non-payment of the debt she allegedly owed.

103. The natural consequence of Defendant's statements was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

104. The natural consequence of Defendant's statements was to cause Plaintiff mental distress.

105. On or about January 25, 2012, at the time Defendant initiated the aforesaid telephone call to Plaintiff in a further attempt to collect the debt, Plaintiff no longer owed the debt.

106. On or about January 25, 2012, despite the fact that Plaintiff no longer owed the debt, Defendant initiated a telephone call to Plaintiff in a further attempt to collect the debt.

107. On or about January 25, 2012, Defendant's representation that Plaintiff owed a debt was false, deceptive and/or misleading given that at the time Defendant made the aforesaid telephone call to Plaintiff, Plaintiff did not owe the debt on which Defendant was attempting to collect.

108. On or about January 25, 2012, Defendant's representation that Plaintiff owed a debt misrepresented the character, nature and/or legal status of the debt on which Defendant was attempting to collect given that at the time Defendant made the aforesaid telephone call to Plaintiff, Plaintiff did not owe the debt on which Defendant was attempting to collect.

109. On or about February 17, 2012, Defendant initiated a telephone call to Plaintiff in a further attempt to collect the debt.

110. On or about February 22, 2012, Defendant initiated a telephone call to Plaintiff in a further attempt to collect the debt.

111. In February 2012, Defendant reported to the "consumer reporting agencies" as that term is defined by §1681a(f) of the Fair Credit Reporting Act, (hereinafter, "FCRA") 15 U.S.C. §1681 *et seq*, that Plaintiff owed the debt.

112. In February 2012, Defendant reported to the consumer reporting agencies that Plaintiff owed the debt in the amount of $3,387.00.

113. At the time Defendant reported to the consumer reporting agencies that Plaintiff owed the debt, the debt had been paid in full.

114. At the time Defendant reported to the consumer reporting agencies that Plaintiff owed the debt in the amount of $3,387.00, Plaintiff did not owe the aforesaid amount relative to the debt.

115. At the time Defendant reported to the consumer reporting agencies that Plaintiff owed the debt, Defendant did not report that Plaintiff disputed the status of owing the debt on which Defendant was attempting to collect.

116. Defendant, by reporting to the consumer reporting agencies, in February 2012, that Plaintiff owed the debt, misrepresented the character, nature and/or legal status of the debt

on which it was attempting to collect given that at the time Defendant reported the aforesaid debt to the consumer reporting agencies Plaintiff did not owe the debt.

117. Defendant's representation to the consumer reporting agencies, in February 2012, that Plaintiff owed a debt was false, deceptive and/or misleading given that at the time Defendant reported the aforesaid debt to the consumer reporting agencies Plaintiff did not owe the debt.

118. In February 2012, Defendant reported false credit information about Plaintiff to the consumer reporting agencies given that as of February 2012, Plaintiff did not owe a debt in the amount of $3,387.00.

119. In its attempts to collect the debt allegedly owed by Plaintiff to UCHM and/or Walgreens, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

    a. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

    b. Used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader in violation of 15 U.S.C. §1692d(2);

    c. Placed a telephone call to a consumer without meaningful disclosure of the caller's identity in violation of 15 U.S.C. §1692d(6);

    d. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

    e. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

    f. Communicated or threatened to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed in violation of 15 U.S.C. §1692e(8);

    g. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

    h.    Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

    i.    Failed to comply with the provisions of 15 U.S.C. §1692g(a);

    j.    Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

120.    As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

### V.    JURY DEMAND

121.    Plaintiff hereby demands a trial by jury on all issues so triable.

### VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JOAN SILKE, by and through her attorneys, respectfully prays for judgment as follows:

    a.    All actual compensatory damages suffered;

    b.    Statutory damages of $1,000.00;

    c.    Plaintiff's attorneys' fees and costs;

    d.    Any other relief deemed appropriate by this Honorable Court.

    Respectfully submitted,
**JOAN SILKE**

By:    s/ David M. Marco
    Attorney for Plaintiff

Dated: April 17, 2012

David M. Marco (Atty. No.: 6273315)
LARRY P. SMITH & ASSOCIATES, LTD.
205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
Telephone:  (312) 546-6539
Facsimile:  (888) 418-1277
E-Mail:    dmarco@smithlaw.us